Our final case this morning is No. 14-1512 in Re Downhole Products, Ltd., Mr. Conrad. Thank you, Your Honor. Good morning, and may it please the Court. We believe that the Board's obvious misfinding in this case was the product of hindsight bias. There are three claim elements in the patented invention that are not in the only prior art casing centralizer cited by the Board in this case. First, all of the claim elements require the use of a plastic material. Second, some of the claims require the use of a divided centralizer. And third, some of the other dependent claims require the addition of a filler material to use with the plastic material. Now, the Board supplied each of those missing claim elements from non-analogous references, and in each case did so by reasoning backward from the patented solution in order to find that those references were, in fact, analogous. The three non-analogous references that the Board relied on are all production process components that go inside the casing. These are all components that work in a downhole environment, right? That is correct, Your Honor. So if these aren't analogous art, what is your conception of what would be regarded as analogous art? Because they're all this equipment working in the exact same silo. One of skill in the art in that silo wouldn't have to look very far to find Carson and Carlson and all the rest. Well, they are used in the same physical location in a sense in that they're all a downhole in a level. But, Your Honor, I would disagree with that because they're used at very different stages of the process of downhole drilling. So the casing centralizer of the 275 patent, for example, is a well construction component, and it's used during the process of actually creating the well. By contrast, the paraffin scraper in Carson, for example, is not. It is used during the process of extracting oil from a protected production zone inside of a completed casing already. Those two environments are very different, and the problems solved by those components are also very different. So what did the 275 patent mean when it talked about how the centralizer could be used inside the casing as well? The same considerations are at play, Your Honor, in that sense as well, because when the casing centralizer is used in an interior casing to space it apart from an outer casing, it's still being cemented in place, and it's still doing all of the things that a casing centralizer has to do, which involves providing structural support to prevent a collapse of the wellbore, providing isolation support to prevent contaminants from the wellbore from getting into the production zone, and centering a very heavy casing. None of those purposes are at issue in the Carson patent with respect to the paraffin scraper that it uses. The other thing that I would point out about using an interior casing, one inside another, is that part of the casing is inside another casing, and then the interior casing extends further down the wellbore into a new zone, so it touches the exterior as well, and what you don't want to happen is the contaminants from the wellbore to come up inside between the two casings and threaten to get into the production zone. So in that sense, the casing centralizer in the 275 patent is doing the exact same thing in that scenario that it does when it's outside the casing. Now, we believe that the only way that the Board was actually able to conclude that the Carson reference was an analogous reference was by reasoning backward from the patent invention with hindsight reasoning. I would point the Court to page JA8, for example, in the Board's decision, and at the top of page JA8, what the Board is doing here is applying the second part of the analogous art test, which is to determine whether Carson is reasonably pertinent to a problem being addressed by the 275 patent. And the problem at the top of this page that the Board identifies is the selection of a suitable material, but the only thing that the Board points to for that proposition, the only cite that the Board gives, is to column four of the patent, which is in the detailed description of disclosed embodiments. So in other words, what the Board has done is pointed to the patented solution and called that the problem being addressed by the 275 patent. I can't think of a more clear example of hindsight reasoning than that. And the Board, in fact, did that on three separate occasions. Carson, though, talks about how its scraper also acts as a centralizer, and the Board cited that very line from Carson's spec at JA8, right? Your Honor, the Board did point to the fact that Carson said that it serves as a centralizer, but the thing that Carson does in terms of centralizing is to centralize a sucker rod within the protected production zone. That is a very different problem than centering a casing centralizer, excuse me, that is a very different problem from centering a casing inside of a whale bore. But the aim of any centralizer is to be able to hold whatever tube it's surrounding away from some exterior, some other tube or the whale bore itself. I don't think that the problem can be understood at such a generic level. So in cases like In re Otiker, for example, or Wong Laboratories, the Court made clear that, say, not all hooking problems in Otiker were the same, not all computer memories address the same problems in Wong Laboratories. That's exactly what we have here. The centralization problems that are being addressed are very, very different because the casing centralizer in the 275 patent has to centralize a very heavy casing inside of a very hostile environment where the whale bore is often rocky and jagged and uneven while also providing that structural support and isolation support. Carson doesn't have to worry about any of those considerations, and the centralizing function that Carson performs is that it's injection molded onto the sucker rod inside of the production tube. And so from there then it extends all the way out to be flush with the production tube so that it can scrape paraffin deposits off the inside of the tube. What that means is that Carson centralizes inherently because it extends all the way from the inside all the way to the outside. And that's what it does inherently, but it doesn't do any of the other things. And centralizing something as relatively small as a sucker rod has a very different proposition than centralizing a very heavy metal casing inside of a very hostile environment of a whale bore. Now, again, what the bore did on three separate occasions was to reason backwards from the patented solution in order to find these references to be analogous. So I would point the court also to… Because, I mean, even if there weren't any Carsons here, why wouldn't the use of plastic be obvious to Trott in this environment because of its properties of no sparking and so on and so forth? I would make a couple of points, Your Honor. First, we don't have any findings from the board that are separate and apart from Carson's. So on the record before this court, we have to deal with the reasoning that the board gave under ordinary administrative law principles, and the reason that the board gave was related directly to the Carson reference. That being said, we don't think that this would be obvious to Trott at all. There are no findings that there are any kind of finite number of solutions that might be involved here. And the hostile environment that we're talking about is not one that naturally calls out for a material like plastic. Now, the board has also pointed to the fact that plastic is common and cheap. But if that's the driving consideration behind the features that plastic offers, that is just another example of why you wouldn't use it in a component like a casing centralizer. A person with skill in the art who's aiming to build something as important as an oil well would not use components that are low quality and ineffective. And, in fact— Well, you say that, but your expert didn't say that, right? I'm sorry, Your Honor. Our expert didn't say that somebody wouldn't think to use plastic in that sense? Yeah. Well, our expert declarations were directed towards the issue of analogous art and in the distinctions between— But the point is you're making arguments here which aren't supported by your expert affidavit. Well, we're making arguments about what the nature of a downhole wellbore would be and where you would use it. Our expert did say that a casing centralizer is used for structural support and isolation support, which is basically what I'm saying, that it's a very hostile environment that's required to keep contaminants out and to prevent wellbore collapses. It's not a natural environment for the use of plastic, and the only thing that the Board was able to point to for this proposition is a 20-year-old reference related to plastic paraffin scrapers that are used for very different purposes in a very different part of an oil well. And we think for that reason that it's another example of why this is only hindsight reasoning from which the Board is able to look to Carson and say that you could use plastic. Now, another reason that you wouldn't—that a person with skill in the art wouldn't find it obvious to pull a plastic element from Carson is the fact that Carson does require this injection molding in order for it to function. Carson says, for example, or points at JA-2296, that it achieves its objectives as a centralizer of a sucker rod and as a paraffin scraper by being injection molded so that there is a tight frictional grip around the sucker rod. The 275 patent, by contrast, requires freedom of movement and a clearance fit so that it can move up and down and rotate freely. And Carson said that, in fact, having that kind of freedom of movement in a paraffin scraper would cause failure, and it was a reason that people with skill in the art had abandoned plastic in the use of paraffin scrapers in the past. All of that taken together shows that a person with skill in the art would not look to Carson in order to achieve the patented solution and the claims as a whole as used here. Now, there's also some internal inconsistency in the Board's reasoning on that point, because on JA-12, the only way the Board was able to find the Russell reference to be pertinent to a problem addressed by the 275 patent was to hold that the problem was facilitating installation by dividing into two semi-cylindrical half sections. Again, the only reference that the Board points to here is the summary of the invention in the disclosed body. That's reasoning backward from the patented solution. That's a problem in and of itself. But Claim 14, when it requires a divided casing centralizer, also has the claimed plastic element. And so what the Board has done here is it has defined two separate problems being addressed by the 275 patent, in each case deriving the problem being addressed from the patented solution. And they point in opposite directions, because if facilitating installation is important for Russell, then it surely ought to be important for the Carson reference as well, especially when it says to use a tight, frictional grip around the sucker rod, and the 275 patent points in the exact opposite direction. You're into your rebuttal time, Mr. Conroy. Do you want to save the rest of it? I would be happy to save the rest of my time, Your Honor. Thank you. Okay, thank you. Ms. Rasheed. May I plead with the Court? All of Downhill's arguments before this Court have focused on hindsight reasoning, which goes to the second part of the analogous art test. Downhill completely ignores the first test, which looks to whether or not the references are in the same field of endeavor, and here clearly the references are in the same field of endeavor. The Carson reference expressly teaches the ready suitability of plastic for metal in a very similar context in the same field, which was in order to provide the centralizer for the predictable established properties of plastic, including insulation, preventing corrosion, reducing friction, minimizing the problem of rod, tubing, and casing wear and tear. At bottom, Downhill's case confronts a highly technical argument about whether centralizers used inside of a casing that are structurally similar to the claimed invention, which is readily obvious when you compare Downhill's figure in its patent, figure one, to the Carson, the figure in Carson's, and also not only are they structurally similar, they function. They have overlapping functions in order to center a casing or a tube or a pipe within a larger casing or a larger pipe or a larger tube. Moreover, they operate in the same environment because they are all in the Downhill drilling environment, and they allow fluid to pass the centralizer while centering the tube. The answer has to be that Carson is analogous to the claimed invention, especially because here we also have Langer, which confirms that the field of endeavor is not just limited to casing centralizers that are used on the outside of a casing and that are exposed to a well bore. Langer teaches that the field of endeavor would be protectors, stabilizers, and centralizers for use in well bore operations because they're all in the same or similar environment and they're directed to the same purpose of centering the tube within a larger tube. Downhill also raised the argument about Downhill raised the argument that the board was, by defining the problem to be solved based on the claimed invention, the board didn't do that. The board relied on the teachings of the references and the board found that Carson's centralizer and the casing centralizers in Mikolajczyk and in Downhill are provided for the same purpose, which is the test that is outlined for defining the problem to be solved in Inri Klein and in Inri Clay. That purpose is to centralize, stabilize, and protect well bore tubing because they both allow well bore tubing to be centralized and to protect that tubing while allowing fluid to pass through. With regards to the problem to be solved, we do contest that Downhill solved any problem. It's not even clear to us that Downhill solved any problem here that wasn't already solved by Carson 20 years earlier. Instead, all Downhill did was to take the next step, which was to use plastic instead of metal. And it was able to obtain a patent already a long time ago by substituting that plastic for metal and obtaining benefits that were predictable and well known in the art. Are there any further questions? Okay, thank you, Ms. Rasheed. Mr. Conrad? Thank you, Your Honor. I just want to make one quick point. The only point I want to make is that with a casing centralizer, you really only get one shot at using it. You put the casing into the well bore, you put the casing centralizer on, and you cement it in place. If it hasn't done its job, it's broken, and you have an extremely expensive mess on your hand. You can't just take it out and put a new one on. The materials that you have to use have to stand up to the test of time and the hostile environment that are used there. That is not true of all of the references that the Board has cited in this case that are used in the interior production zone. So that's just another reason that we think that these are not analogous references and it would not have been obvious from a skill in the art to use plastic. If there are no further questions, I'd be happy to sit down. Okay, thank you, Mr. Conrad. Thank both counsel. The case is submitted and that concludes our session for today.